IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 14-41720 |
| Richard Hank and Joan Hank, | ) | Chapter 11 |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| Debtors/Debtors-in-Possession. | ) | |


**DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT**


**DEBTORS' COUNSEL**:
Eugene Crane (Atty. No. 0537039)
Arthur G. Simon (Atty. No. 03124481)
Jeffrey C. Dan (Atty. No. 06242750)
Brian P. Welch (Atty. No. 6307292)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777
FAX: (312) 641-7114

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 14-41720 |
| Richard Hank and Joan Hank, | ) | Chapter 11 |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| Debtors/Debtors-in-Possession. | ) | |

## DEBTORS' SECOND AMENDED DISCLOSURE STATEMENT

Richard Hank and Joan Hank, Debtors/Debtors-in-Possession herein ("Debtors"), by and through their Attorneys, propose the following Second Amended Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code and in conjunction with their Second Amended Plan of Reorganization ("Plan").  A copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.[1]

## INTRODUCTION

On November 19, 2014 (the "Petition Date"), an order for relief was entered in the above-captioned bankruptcy case pursuant to a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  Since the Petition Date, the Debtors have operated their business and managed their financial affairs as Debtors-in-Possession.  No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 Case.  The Debtors are the owners and operators of numerous residential properties which they rent to various tenants.

---

[1]Capitalized terms not defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

The Debtors are the proponents of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized from the continued operation of the Debtors' business as well as from existing cash deposits and cash resources of the Debtors and the sale of certain of the Debtors' properties.  To the extent necessary, the payment of the Allowed Secured Claims, as provided for in the Plan (except for monthly interest payments), may be made from the proceeds of refinancing and/or the sale of the Debtors' assets (or some portion thereof).

## SUMMARY OF TREATMENT OF CLAIMS
## AND INTERESTS UNDER THE PLAN

The Plan has one (1) category of Administrative Claims, one (1) category of Tax Claims and 55 Classes of creditors (Classes 1, 2A-B, 3, 4A-H, 5A-I, 6A-C, 7A-I, 8A-B, 9A-I, 10, 11, 12, 13A-B, 14, 15, 16, 17, 18 and 19).  These Claims and Interests, and the treatment thereof, under the Plan consist of the following:

### Administrative Claims[2]

Administrative Claims are provided for in Article IV, Section 4.1 of the Plan, are unimpaired under the Plan and primarily consist of Allowed Claims comprised of fees and expenses of professionals retained pursuant to Orders entered by the Bankruptcy Court.  These fees and expenses are projected as follows:

---

[2]Since the Debtors' Chapter 11 Cases were commenced as voluntary proceedings, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

| Professional | Amount[3] |
|---|---|
| Crane, Heyman, Simon, Welch & Clar, Debtor's Counsel | $150,000.00 |
| Mandel Advisory Group Ltd., Debtor's Accountants | $10,000.00 |

The amounts projected to professionals holding Allowed Administrative Claims are in addition to amounts previously paid as pre-petition retainers and any interim allowances made by the Bankruptcy Court to such professionals.  The retainers previously paid  to Debtors' professionals were as follows:

| Professional | Aggregate Amount Previously Paid | Basis for Prior Payment |
|---|---|---|
| Crane, Heyman, Simon, Welch & Clar Debtor's Counsel | $36,000.00 | Pre-Petition Retainer |

No professional shall be paid unless and until the Bankruptcy Court has entered appropriate Orders allowing the compensation and reimbursement of expenses requested by such professionals.  Under the Plan, the Claims of professionals, after credit for retainers and other payments during the course of the Chapter 11 cases, are payable upon allowance by the Bankruptcy Court.

Also included in this category of Administrative Claims are post-petition trade payables and post-petition real estate taxes.  Under the Plan, post-petition trade payables and post-petition

---

[3] These amounts are merely the Debtors' estimates and are, therefore, subject to change. Furthermore, in projecting these amounts, the Debtors do not expect a contested Confirmation hearing. In the event of a contested Confirmation hearing, Administrative Claims of professionals may increase.

real estate taxes for properties that will be retained by the Debtors will be paid in the ordinary course of business from available existing cash resources of the Debtors.

Other than post-petition trade payables, all Administrative Claims, to the extent allowed and subject to the limitations set forth in the Plan, will be paid in full in cash on the Effective Date or as soon as practicable thereafter (and in the case of professionals, after allowance by the Bankruptcy Court) or as agreed to by the holder of each Allowed Administrative Claim. The source of funds for payment of such Administrative Claims will be the existing cash resources of the Debtors or such other cash as may be generated by the Debtors from the operation of their business in the ordinary course.

**Tax Claims**

The Plan has a specific provision for the payment of taxes which are of the type entitled to priority under Section 507(a)(8) of the Bankruptcy Code in Article IV, Section 4.2 of the Plan. The Plan provides that to the extent any Tax Claim is allowed, such Tax Claims shall be paid in full, in cash, inclusive of allowed interest as provided by applicable federal or state statutes, in equal installment payments over a five (5) year period that is no later than five (5) years after the filing dates of these bankruptcy cases, unless the holder thereof agrees to a different treatment. The payments will be made on a quarterly basis commencing on the first day of the quarter following the Effective Date and each quarter thereafter. This treatment of Allowed Tax Claims is intended to comply with the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

There are different treatments of the remaining creditors in this Plan. Some of the classes

-5-

will fall into one of the following treatments:

**Treatment A**: The treatment of Allowed Claims under Treatment A is to be identical to that provided for in the Sale Procedure Order ("Sale Order") entered by this Court on or about April 17, 2015. Pursuant to Treatment A, the creditor will retain the liens and security interests, if any,  it had against the Debtors' property as of the Petition Date.  Furthermore, the creditor shall also retain any liens and security interests it acquired against the Debtors' property during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.

Pursuant to the Sale Order, the property in which the creditor claims a lien, shall be sold. The net proceeds from the sale, after payment of closing costs, including, but not limited to title charges, tax prorations, brokers fees, security deposit credits and attorney fees, up to the amount of the Allowed Claim realized from the sale of the property shall be paid to the creditor at the closing of the sale.  Pursuant to the Sale Order and the Plan, the payment at closing to the creditor will be in full and final satisfaction of the Allowed Claim.  To the extent that any provisions of the Plan conflict with the Sale Order, the Sale Order will control.

Upon the payment under the Plan at the closing of the Sale to the creditor as required by the Plan, all of the liens, security interests and Claims of the creditor shall be deemed released and discharged.  Pursuant to the closing of the sale of the property and to the extent requested by the Debtors, once the Allowed Claim is paid as required by the Plan, the creditor shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  The Bankruptcy Court shall retain jurisdiction to enter a judicial release, should the secured creditor fail to reasonably comply with this provision, or in the alternative compel the secured creditor to comply.  Any right of any party under Section 506(c)

of the Bankruptcy Code as against the holder of the Allowed Claim or its collateral shall be preserved and shall survive Confirmation of the Plan.

**Treatment B**:  Pursuant to Treatment B, the creditor will retain the liens and security interests it had against the Debtors' property as of the Petition Date.  Furthermore, the creditor shall also retain any liens and security interests it acquired against the Debtors' property during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.

Pursuant to Treatment B, in full and final satisfaction, release and discharge of Allowed Claims under Treatment B, the Debtors will maintain the property and will list the property for sale, at a price consistent with the market in the area of the property.  The Debtors will have no liability or responsibility for any payments to the creditor during the time that the property is listed for sale.  The property will be listed to be sold and will be sold within one (1) year of the Effective Date.  At the closing of the sale of the property, the creditor will receive in full and final satisfaction, release and discharge of its Allowed Claim, the net proceeds from the sale, after the payment of closing costs, including, but not limited to title charges, tax prorations, brokers fees, security deposit credits and attorney fees, up to the amount of the Allowed Claim. Upon the payment under the Plan, at the closing of the Sale, to the creditor on account of the Allowed Claim as required by the Plan, all of the liens, security interests and Claims of the creditor shall be deemed released and discharged.  Pursuant to the closing of the sale of the property and to the extent requested by the Debtors, once the Allowed Claim is paid as required by the Plan, the creditor shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  The Bankruptcy Court shall retain jurisdiction to enter a judicial release, should the creditor fail to reasonably

-7-

comply with this provision, or in the alternative compel the creditor to comply.  Any right of any

party under Section 506(c) of the Bankruptcy Code as against the holder of the Allowed Claim or

its collateral shall be preserved and shall survive Confirmation of the Plan.  If the property is not

sold within one (1) year of the Effective Date, the Debtors will provide the creditor with a deed

in lieu or a consent foreclosure for the property in full and final satisfaction, release and

discharge of the Allowed Claim.  If the Debtors determine they will be unable to sell the property

within the one (1) year period, they may provide the creditor with the deed in lieu or a consent

foreclosure prior to that time, in full and final satisfaction, release and discharge of the allowed

claim.

     **Treatment C**:  The treatment of Allowed Claims under Treatment C allows the creditor

to make an election as to the treatment of the property in which it claims a lien.  Pursuant to

Treatment C, the creditor will retain the liens and security interests it had against the Debtors'

property as of the Petition Date.  Furthermore, the creditor shall also retain any liens and security

interests it acquired against the Debtors' property during the course of this Chapter 11 case

pursuant to Orders entered by the Bankruptcy Court.

     Pursuant to Treatment C, the creditor shall elect one of the two following treatments of its

claim and the property securing its claim: (1) in full and final satisfaction, release and discharge

of Allowed Claims under Treatment C, the Debtors will provide the creditor with a deed in lieu

or a consent foreclosure for the property; by accepting the deed in lieu or consent foreclosure, the

creditor's Allowed Claim will be deemed satisfied; during the period of time which the Debtors

and the creditor will execute the deed in lieu or the consent foreclosure, the Debtors will not be

obligated to make any payments to the creditor; or (2) the Debtors will maintain the property and

will list the property for sale, at a price consistent with the market in the area of the property. The Debtors will have no liability or responsibility for any payments to the creditor during the time that the property is listed for sale. The property will be listed to be sold and will be sold within six (6) months of the Effective Date. At the closing of the sale of the property, the creditor will receive in full and final satisfaction, release and discharge of its Allowed Claim, the net proceeds from the sale, after the payment of usual and customary closing costs, including, but not limited to title charges, tax prorations, brokers fees, security deposit credits and attorney fees, up to the amount of the Allowed Claim. Upon the payment under the Plan, at the closing of the Sale, to the creditor pursuant to its Allowed Claim, all of the liens, security interests and Claims of the creditor shall be deemed released and discharged. Pursuant to the closing of the sale of the property and to the extent requested by the Debtors, once the Allowed Claim is paid as required by the Plan, the creditor shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests. The Bankruptcy Court shall retain jurisdiction to enter a judicial release, should the creditor fail to reasonably comply with this provision, or in the alternative compel the creditor to comply. Any right of any party under Section 506(c) of the Bankruptcy Code as against the holder of the Allowed Claim or its collateral shall be preserved and shall survive Confirmation of the Plan. If the property is not sold within six (6) months of the Effective Date, the Debtors will provide the creditor with a deed in lieu or consent foreclosure for the property in full and final satisfaction, release and discharge of the Allowed Claim.

If the creditor fails to make the election by the date for submitting ballots in voting on the Plan, the creditor will have been deemed to have elected Option (1).

Should there be multiple mortgage liens on a property and the mortgage holders do not each elect Option (2), Option (1) will be deemed to have been elected and the Debtors will provide a deed in lieu or consent foreclosure to the holder of the first mortgage.  All claims of the holder of the first mortgage and the holder of the second mortgage against the Debtors will be deemed satisfied.  If the secured creditors each elect Option (2) and the property is sold, the proceeds from the closing will pay the first mortgage first and then the second mortgage, if funds are available.

If the creditor elects to accept a consent foreclosure or if under option 2 the property is not sold within six (6) months and the creditor requests a consent foreclosure instead of a deed in lieu, the creditor shall complete the consent foreclosure process as soon as practicable but in not more that one hundred twenty (120) days.  The failure to complete the consent foreclosure in a timely manner will allow the Debtors to provide a deed in lieu instead of a consent foreclosure at the sole option of the Debtors.

The remaining classes that do not fall into Treatment A, Treatment B or Treatment C and the treatments for those classes are specified further below.


**Class 1 Claim**

Indymac is the holder of the Allowed Class 1 Claim.  For purposes of the Plan, the allowed amount of the Class 1 Claim is $335,341.79.   The Class 1 Claim is impaired.  The treatment of the Allowed Class 1 Claim is set forth in Article VI, Section 6.1 of the Plan. Indymac claims a lien on the real property owned by the Debtors located at 1826 S. Euclid Avenue, Berwyn Illinois.  The Allowed Class 1 Claim will receive Treatment C enumerated

above.

## Class 2A Claim

CFS-4 IV LLC is the holder of the Allowed Class 2A Claim.  For purposes of the Plan, the allowed amount of the Class 2A Claim is $279,668.74.  The Class 2A Claim is impaired. The treatment of the Allowed Class 2A Claim is set forth in Article VI, Section 6.2A of the Plan. CFS-4 IV LLC claims a lien against the Debtors' property located at 4603 Grove Avenue, Brookfield, Illinois.  CFS-4 IV LLC shall retain the liens and security interests it had against the Debtors' property as of the Petition Date.  Furthermore, CFS-4 IV LLC shall also retain any liens and security interests it acquired against the Debtors' property during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.  Any and all defaults shall be capitalized into the total amount owed to CFS-4 IV LLC.  In full and final satisfaction, release and discharge of the Allowed Class 2A Claim, the Debtors shall pay CFS-4 IV LLC the amount owed pursuant to the terms of the note between CFS-4 IV LLC and the Debtors at the contract non-default interest rate under that note over the remaining term of the note.  The Debtors may accelerate payments to the CFS-4 IV LLC.  All unaccrued interest shall be deemed waived and no penalty shall be chargeable to the Debtors in the event that the Debtors elect to accelerate payments.

Upon completion of the payments of the amount owed pursuant to the note to CFS-4 IV LLC on account of the Allowed Class 2A Claim as required by the Plan, all of the liens, security interests and Claims of CFS-4 IV LLC shall be deemed released and discharged.  To the extent requested by the Debtors, once the Allowed Class 2A Claim is paid as required by the Plan, CFS-

4 IV LLC shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  Any right of any party under Section 506(c) of the Bankruptcy Code as against CFS-4 IV LLC or its collateral shall be preserved and shall survive Confirmation of the Plan.

CFS-4 IV LLC shall only be entitled to the reimbursement of reasonable attorneys' and professionals' fees and costs arising after Confirmation in the event that the Debtors are in material default of the payments required under the Plan on account of the Allowed Class 2A Claim (which default remains uncured after ten (10) days of the actual receipt of written notice to the Debtors from CFS-4 IV LLC as required by this Plan) and in the further event that the underlying note provides for such fees.   In the event of a material default by the Debtors under the Plan with respect to the payment of the Allowed Class 2A Claim, CFS-4 IV LLC shall provide written notice of such default as required by the underlying loan documents as well as to the Debtors by transmitting such default notice by first class mail and telefax to the Debtors to the attention of Richard Hank, 1447 Ashland, River Forest, Illinois 60305, 708-771-3792 ("Default Notice").

**Class 2B Claim**

**6.2B    Class 2B**: CFS-4 IV LLC is the holder of the Allowed Class 2B Claim.  For purposes of the Plan, the allowed amount of the Class 2B Claim is $184,154.96.  The Class 2B Claim is impaired.  The treatment of the Allowed Class 2B Claim is set forth in Article VI, Section 6.2B of the Plan.  CFS-4 IV LLC claims a lien against the Debtors' property located at 6648 W. 19th St., Berwyn, Illinois.  CFS-4 IV LLC shall retain the liens and security interests it

-12-

had against the Debtors' property as of the Petition Date.  Furthermore, CFS-4 IV LLC shall also

retain any liens and security interests it acquired against the Debtors' property during the course

of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.  Any and all defaults

shall be capitalized into the total amount owed to CFS-4 IV LLC.  In full and final satisfaction,

release and discharge of the Allowed Class 2B Claim, the Debtors shall pay CFS-4 IV LLC the

amount owed pursuant to the terms of the note between CFS-4 IV LLC and the Debtors at the

contract non-default interest rate under that note over the remaining term of the note.  The

Debtors may accelerate payments to the CFS-4 IV LLC.  All unaccrued interest shall be deemed

waived and no penalty shall be chargeable to the Debtors in the event that the Debtors elect to

accelerate payments.

Upon completion of the payments of the amount owed pursuant to the note to CFS-4 IV

LLC on account of the Allowed Class 2B Claim as required by the Plan, all of the liens, security

interests and Claims of CFS-4 IV LLC shall be deemed released and discharged.  To the extent

requested by the Debtors, once the Allowed Class 2B Claim is paid as required by the Plan, CFS-

4 IV LLC shall prepare and file any and all documents that may be reasonably necessary to

effectuate the termination of such liens and security interests.  Any right of any party under

Section 506(c) of the Bankruptcy Code as CFS-4 IV LLC or its collateral shall be preserved and

shall survive Confirmation of the Plan.

CFS-4 IV LLC shall only be entitled to the reimbursement of reasonable attorneys' and

professionals' fees and costs arising after Confirmation in the event that the Debtors are in

material default of the payments required under the Plan on account of the Allowed Class 2B

Claim (which default remains uncured after ten (10) days of the actual receipt of written notice to

-13-

the Debtors from CFS-4 IV LLC as required by this Plan) and in the further event that the

underlying note provides for such fees.   In the event of a material default by the Debtors under

the Plan with respect to the payment of the Allowed Class 2B Claim, CFS-4 IV LLC shall

provide written notice of such default as required by the underlying loan documents as well as to

the Debtors by transmitting a Default Notice as described in Section 6.2A of this Plan.


**Class 3 Claim**

SLS is the holder of the Allowed Class 3 Claim.  For purposes of the Plan, the allowed

amount of the Class 3 Claim is $397,645.83.  The Class 3 Claim is impaired.  The treatment of

the Allowed Class 3 Claim is set forth in Article VI, Section 6.3 of the Plan.  SLS claims a lien

on the real property owned by the Debtors located at 2936 S. Harlem Avenue, Riverside, Illinois.

The Allowed Class 3 Claim will receive Treatment C enumerated above.


**Class 4A Claim**

Ocwen is the holder of the Allowed Class 4A Claim.  For purposes of the Plan, the

allowed amount of the Class 4A Claim is $362,421.74.   The Class 4A Claim is impaired.  The

treatment of the Allowed Class 4A Claim is set forth in Article VI, Section 6.4A of the Plan.

Ocwen claims a lien on the real property owned by the Debtors located at 4529 Forest Avenue,

Brookfield, Illinois.  The Allowed Class 4A Claim will receive Treatment C enumerated above.

**Class 4B Claim**

Ocwen is the holder of the Allowed Class 4B Claim.  For purposes of the Plan, the allowed amount of the Class 4B Claim is $376,914.55.   The Class 4B Claim is impaired.  The treatment of the Allowed Class 4B Claim is set forth in Article VI, Section 6.4B of the Plan. Ocwen claims a lien on the real property owned by the Debtors located at 4609 S. Grove, Brookfield, Illinois.  The Allowed Class 4B Claim will receive Treatment C enumerated above.

**Class 4C Claim**

Ocwen is the holder of the Allowed Class 4C Claim.  For purposes of the Plan, the allowed amount of the Class 4C Claim is $422,933.53.   The Class 4C Claim is impaired.  The treatment of the Allowed Class 4C Claim is set forth in Article VI, Section 6.4C of the Plan. Ocwen claims a lien on the real property owned by the Debtors located at 2922 S. Harlem, Riverside, Illinois.  The Allowed Class 4C Claim will receive Treatment C enumerated above.

**Class 4D Claim**

Ocwen is the holder of the Allowed Class 4D Claim.  For purposes of the Plan, the allowed amount of the Class 4D Claim is $336,791.10.   The Class 4D Claim is impaired.  The treatment of the Allowed Class 4D Claim is set forth in Article VI, Section 6.4D of the Plan. Ocwen claims a lien on the real property owned by the Debtors located at 1819 S. Wesley, Berwyn, Illinois.  The Allowed Class 4D Claim will receive Treatment C enumerated above.

**Class 4E Claim**

Ocwen is the holder of the Allowed Class 4E Claim.  For purposes of the Plan, the allowed amount of the Class 4E Claim is $362,580.75.  The Class 4E Claim is impaired.  The treatment of the Allowed Class 4E Claim is set forth in Article VI, Section 6.4E of the Plan.  Ocwen claims a lien on the real property owned by the Debtors located at 3606 S. Clarence, Berwyn, Illinois.  The Allowed Class 4E Claim will receive Treatment C enumerated above.

**Class 4F Claim**

Ocwen is the holder of the Allowed Class 4F Claim.  For purposes of the Plan, the allowed amount of the Class 4F Claim is $361,959.14.  The Class 4F Claim is impaired.  The treatment of the Allowed Class 4F Claim is set forth in Article VI, Section 6.4F of the Plan.  Ocwen claims a lien on the real property owned by the Debtors located at 1932 S. Euclid, Berwyn, Illinois.  The Allowed Class 4F Claim will receive Treatment C enumerated above.

**Class 4G Claim**

Ocwen is the holder of the Allowed Class 4G Claim.  For purposes of the Plan, the allowed amount of the Class 4G Claim is $345,073.48.   The Class 4G Claim is impaired.  The treatment of the Allowed Class 4G Claim is set forth in Article VI, Section 6.4G of the Plan.  Ocwen claims a lien on the real property owned by the Debtors located at 2926 S. Harlem Avenue, Riverside, Illinois.  The Allowed Class 4G Claim will receive Treatment C enumerated above.  There is also a second mortgage on the 2926 S. Harlem property, the treatment of which is referenced in Section 6.13 of the Plan.

**Class 4H Claim**

Ocwen is the holder of the Allowed Class 4H Claim.  For purposes of the Plan, the allowed amount of the Class 4H Claim is $335,341.79.   The Class 4H Claim is impaired.  The treatment of the Allowed Class 4H Claim is set forth in Article VI, Section 6.4H of the Plan. Ocwen claims a lien on the real property owned by the Debtors located at 1826 S. Euclid Avenue, Berwyn, Illinois.  The Allowed Class 4H Claim will receive Treatment C enumerated above.

**Class 5A Claim**

SPS is the holder of the Allowed Class 5A Claim.  For purposes of the Plan, the allowed amount of the Class 5A Claim is $322,008.50.   The Class 5A Claim is impaired.  The treatment of the Allowed Class 5A Claim is set forth in Article VI, Section 6.5A of the Plan. SPS claims a lien on the real property owned by the Debtors located at 1845 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 5A Claim will receive Treatment C enumerated above.

**Class 5B Claim**

SPS is the holder of the Allowed Class 5B Claim.  For purposes of the Plan, the allowed amount of the Class 5B Claim is $230,669.05.   The Class 5B Claim is impaired.  The treatment of the Allowed Class 5B Claim is set forth in Article VI, Section 6.5B of the Plan. SPS claims a lien on the real property owned by the Debtors located at 3314 East Avenue, Berwyn, Illinois.  The Allowed Class 5B Claim will receive Treatment C enumerated above.

**Class 5C Claim**

SPS is the holder of the Allowed Class 5C Claim.  For purposes of the Plan, the allowed amount of the Class 5C Claim is $324,541.75.   The Class 5C Claim is impaired.  The treatment of the Allowed Class 5C Claim is set forth in Article VI, Section 6.5C of the Plan. SPS claims a lien on the real property owned by the Debtors located at 1803 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 5C Claim will receive Treatment C enumerated above.

**Class 5D Claim**

SPS is the holder of the Allowed Class 5D Claim.  For purposes of the Plan, the allowed amount of the Class 5D Claim is $324,906.65.   The Class 5D Claim is impaired.  The treatment of the Allowed Class 5D Claim is set forth in Article VI, Section 6.5D of the Plan. SPS claims a lien on the real property owned by the Debtors located at 1926 S. Euclid, Berwyn, Illinois.  The Allowed Class 5D Claim will receive Treatment C enumerated above.

**Class 5E Claim**

SPS is the holder of the Allowed Class 5E Claim.  For purposes of the Plan, the allowed amount of the Class 5E Claim is $327,140.26.  The Class 5E Claim is impaired.  The treatment of the Allowed Class 5E Claim is set forth in Article VI, Section 6.5E of the Plan.  SPS claims a lien on the real property owned by the Debtors located at 1619 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 5E Claim will receive Treatment C enumerated above.

**Class 5F Claim**

SPS is the holder of the Allowed Class 5F Claim.  For purposes of the Plan, the allowed amount of the Class 5F Claim is $485,687.85.  The Class 5F Claim is impaired.  The treatment of the Allowed Class 5F Claim is set forth in Article VI, Section 6.5F of the Plan.  SPS claims a lien on the real property owned by the Debtors located at 4521 Maple Avenue, Brookfield, Illinois.  The Allowed Class 5F Claim will receive Treatment C enumerated above.

**Class 5G Claim**

SPS is the holder of the Allowed Class 5G Claim.  For purposes of the Plan, the allowed amount of the Class 5G Claim is $328,178.60.  The Class 5G Claim is impaired.  The treatment of the Allowed Class 5G Claim is set forth in Article VI, Section 6.5G of the Plan.  SPS claims a lien on the real property owned by the Debtors located at 1818 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 5G Claim will receive Treatment C enumerated above.

**Class 5H Claim**

SPS is the holder of the Allowed Class 5H Claim.  For purposes of the Plan, the allowed amount of the Class 5H Claim is $306,129.53.   The Class 5H Claim is impaired.  The treatment of the Allowed Class 5H Claim is set forth in Article VI, Section 6.5H of the Plan. SPS claims a lien on the real property owned by the Debtors located at 1641 Wesley Avenue, Berwyn, Illinois.  The Allowed Class 5H Claim will receive Treatment C enumerated above.

**Class 5I Claim**

SPS is the holder of the Allowed Class 5I Claim.  For purposes of the Plan, the allowed amount of the Class 5I Claim is $489,461.01.   The Class 5I Claim is impaired.  The treatment of the Allowed Class 5I Claim is set forth in Article VI, Section 6.5I of the Plan.  SPS claims a lien on the real property owned by the Debtors located at 76 Kimbark Road, Riverside, Illinois.  The Allowed Class 5I Claim will receive Treatment C enumerated above.

**Class 5J Claim**

SPS is the holder of the Allowed Class 5J Claim.  For purposes of the Plan, the allowed amount of the Class 5J Claim is $200,192.73.  The Class 5J Claim is impaired.  The treatment of the Allowed Class 5J Claim is set forth in Article VI, Section 6.5J of the Plan.  SPS claims a second mortgage lien on the real property owned by the Debtors located at 41 Forest Gate Circle, Oak Brook, Illinois.  The Allowed Class 5J Claim will receive Treatment B enumerated above.  Any net payout at closing will be paid to the first mortgage lien first and then to the second mortgage lien.  The treatment of the first mortgage lien claim is referenced in Section 6.7I of the Plan.

**Class 6A Claim**

Eastern is the holder of the Allowed Class 6A Claim.  For purposes of the Plan, the allowed amount of the Class 6A Claim is $443,805.19.   The Class 6A Claim is impaired.  The treatment of the Allowed Class 6A Claim is set forth in Article VI, Section 6.6A of the Plan.  Eastern claims a lien on the real property owned by the Debtors located at 4605 S. Grove St.,

Brookfield, Illinois.  The Allowed Class 6A Claim will receive Treatment A enumerated above.


**Class 6B Claim**

Eastern is the holder of the Allowed Class 6B Claim.  For purposes of the Plan, the
allowed amount of the Class 6B Claim is $342,243.87.   The Class 6B Claim is impaired.  The
treatment of the Allowed Class 6B Claim is set forth in Article VI, Section 6.6B of the Plan.
Eastern claims a lien on the real property owned by the Debtors located at 6432-34 W. 19th St.,
Berwyn, Illinois.  The Allowed Class 6B Claim will receive Treatment C enumerated above.


**Class 6C Claim**

Eastern is the holder of the Allowed Class 6C Claim.  For purposes of the Plan, the
allowed amount of the Class 6C Claim is $630,516.41.  The Class 6C Claim is impaired.  The
treatment of the Allowed Class 6C Claim is set forth in Article VI, Section 6.6C of the Plan.
Eastern claims a lien on the real property owned by the Debtors located at 2840 S. Harlem,
Riverside, Illinois, 2834 S. Harlem, Riverside, Illinois and 2830 S. Harlem, Riverside, Illinois.
The mortgages on the three properties are cross-collateralized.  Eastern shall retain the liens and
security interests it had against the Debtors' property as of the Petition Date.  Furthermore,
Eastern shall also retain any liens and security interests it acquired against the Debtors' property
during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.
Any and all defaults shall be capitalized into the total amount owed to Eastern.

In full and final satisfaction, release and discharge of the Allowed Class 6C Claim,
commencing on the first day of the first calendar month following the Effective Date and

-21-

continuing on the first day of each month thereafter, with the final payment due in the sixtieth

(60th) month ("Payment Period"), the Debtors shall make monthly principal and interest

payments to Eastern, based on the amount of the Allowed Class 6C Claim, amortized over a

thirty (30) year period, with a balloon payment due in the sixtieth (60th) month, at an annual

percentage rate of 5.5%. The Debtors may accelerate payments to Eastern. All unaccrued

interest shall be deemed waived and no penalty shall be chargeable to the Debtors in the event

that the Debtors elect to accelerate payments. The remaining portions of the current notes and

mortgages executed by the Debtors in favor of Eastern regarding the properties that are subject to

the Class 6C Claim, which do not conflict with the provisions of this Plan, remain in full force

going forward. Any and all current defaults under the notes, whether monetary or non-monetary,

are hereby waived.

Upon completion of the payments under the Plan to Eastern on account of the Allowed

Class 6C Claim as required by the Plan, all of the liens, security interests and Claims of Eastern

shall be deemed released and discharged. To the extent requested by the Debtors, once the

Allowed Class 6C Claim is paid as required by the Plan, Eastern shall prepare and file any and all

documents that may be reasonably necessary to effectuate the termination of such liens and

security interests. Any right of any party under Section 506(c) of the Bankruptcy Code as against

Eastern or its collateral shall be preserved and shall survive Confirmation of the Plan.

Eastern shall only be entitled to the reimbursement of reasonable attorneys' and

professionals' fees and costs arising after Confirmation in the event that the Debtors are in

material default of the payments required under the Plan on account of the Allowed Class 6C

Claim (which default remains uncured after ten (10) days of the actual receipt of written notice to

the Debtors from the holder of the Allowed Class 6C Claim as required by this Plan) and in the

further event that the underlying note provides for such fees.   In the event of a material default

by the Debtors under the Plan with respect to the payment of the Allowed Class 6C Claim,

Eastern shall provide written notice of such default as required by the underlying loan documents

as well as  to the Debtors by transmitting a Default Notice as described in Section 6.2A of the

Plan.

Since the three properties that are the subject of the Allowed Class 6C Claim are cross-

collateralized, should the Debtors choose to sell or refinance any of the properties, the payoff

amount of the mortgage held by Eastern against each of the properties shall be up to the total

amount of the Allowed Class 6C Claim, however shall not exceed $350,000 on the 2830 S.

Harlem Property and $600,000.00 on the 2834 and 2840 S. Harlem properties.

The Plan shall supersede and replace the terms and conditions of the loan documents

establishing the Allowed Class 6C Claim.

**Class 7A Claim**

ASC is the holder of the Allowed Class 7A Claim.  For purposes of the Plan, the

allowed amount of the Class 7A Claim is $346,377.86.  The Class 7A Claim is impaired.  The

treatment of the Allowed Class 7A Claim is set forth in Article VI, Section 6.7A of the Plan.

ASC claims a lien on the real property owned by the Debtors located at 2131 Grove Avenue,

Berwyn, Illinois.  The Allowed Class 7A Claim will receive Treatment C enumerated above.

**Class 7B Claim**

ASC is the holder of the Allowed Class 7B Claim.  For purposes of the Plan, the allowed amount of the Class 7B Claim is $364,541.87.  The Class 7B Claim is impaired.  The treatment of the Allowed Class 7B Claim is set forth in Article VI, Section 6.7B of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1945 S. Oak Park Avenue, Berwyn, Illinois.  The Allowed Class 7B Claim will receive Treatment C enumerated above.

**Class 7C Claim**

ASC is the holder of the Allowed Class 7C Claim.  For purposes of the Plan, the allowed amount of the Class 7C Claim is $503,597.36.  The Class 7C Claim is impaired.  The treatment of the Allowed Class 7C Claim is set forth in Article VI, Section 6.7C of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1615 Winding Oaks Way, Unit 203, Naples Florida.  The Allowed Class 7C Claim will receive Treatment C enumerated above.

**Class 7D Claim**

ASC is the holder of the Allowed Class 7D Claim.  For purposes of the Plan, the allowed amount of the Class 7D Claim is $393,890.71.  The Class 7D Claim is impaired.  The treatment of the Allowed Class 7D Claim is set forth in Article VI, Section 6.7D of the Plan. ASC claims a lien on the real property owned by the Debtors located at 3755 Jungle Plum Drive East, Naples, Florida.  The Allowed Class 7D Claim will receive Treatment C enumerated above.

**Class 7E Claim**

ASC is the holder of the Allowed Class 7E Claim.  For purposes of the Plan, the allowed amount of the Class 7E Claim is $329,444.66.  The Class 7E Claim is impaired.  The treatment of the Allowed Class 7E Claim is set forth in Article VI, Section 6.7E of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1811 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 7E Claim will receive Treatment C enumerated above.

**Class 7F Claim**

ASC is the holder of the Allowed Class 7F Claim.  For purposes of the Plan, the allowed amount of the Class 7F Claim is $311,838.24.  The Class 7F Claim is impaired.   The treatment of the Allowed Class 7F Claim is set forth in Article VI, Section 6.7F of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1801 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 7F Claim will receive Treatment C enumerated above.

**Class 7G Claim**

ASC is the holder of the Allowed Class 7G Claim.  For purposes of the Plan, the allowed amount of the Class 7G Claim is $306,247.91.  The Class 7G Claim is impaired.  The treatment of the Allowed Class 7G Claim is set forth in Article VI, Section 6.7G of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1834 S. Kenilworth, Berwyn, Illinois.  The Allowed Class 7G Claim will receive Treatment C enumerated above.

**Class 7H Claim**

ASC is the holder of the Allowed Class 7H Claim.  For purposes of the Plan, the allowed amount of the Class 7H Claim is $309,634.71.  The Class 7H Claim is impaired.  The treatment of the Allowed Class 7H Claim is set forth in Article VI, Section 6.7H of the Plan. ASC claims a lien on the real property owned by the Debtors located at 1822 S. Oak Park Avenue, Berwyn, Illinois.  The Allowed Class 7H Claim will receive Treatment C enumerated above.

**Class 7I Claim**

ASC is the holder of the Allowed Class 7I Claim.  For purposes of the Plan, the allowed amount of the Class 7I Claim is $989,528.61.  The Class 7I Claim is impaired.  The treatment of the Allowed Class 7I Claim is set forth in Article VI, Section 6.7I of the Plan.  ASC claims a lien on the real property owned by the Debtors located at 41 Forest Gate Circle, Oak Brook, Illinois.  The Allowed Class 7I Claim will receive Treatment B enumerated above.  There is also a second mortgage on the 41 Forest Gate Circle property, the treatment of which is referenced in Section 6.5J of the Plan.  Any net payout at closing will be paid to the first mortgage lien first and then to the second mortgage lien.

**Class 8A Claim**

Nationstar is the holder of the Allowed Class 8A Claim.  For purposes of the Plan, the allowed amount of the Class 8A Claim is $237,121.94.  The Class 8A Claim is impaired.  The treatment of the Allowed Class 8A Claim is set forth in Article VI, Section 6.8A of the Plan.

-26-

Nationstar claims a lien on the real property owned by the Debtors located at 1846 S. Oak Park

Avenue, Berwyn, Illinois.  The Allowed Class 8A Claim will receive Treatment A enumerated

above.

**Class 8B Claim**

Nationstar is the holder of the Allowed Class 8B Claim.  For purposes of the Plan, the

allowed amount of the Class 8B Claim is $170,131.58.  The Class 8B Claim is impaired.  The

treatment of the Allowed Class 8B Claim is set forth in Article VI, Section 6.8B of the Plan.

Nationstar claims a lien on the real property owned by the Debtors located at 2930 S. Harlem

Avenue, Riverside, Illinois.  Nationstar shall retain the liens and security interests it had against

the Debtors' property as of the Petition Date.  Furthermore, Nationstar shall also retain any liens

and security interests it acquired against the Debtors' property during the course of this Chapter

11 case pursuant to Orders entered by the Bankruptcy Court.  Any and all defaults shall be

capitalized into the total amount owed to Nationstar.

In full and final satisfaction, release and discharge of the Allowed Class 8B Claim,

commencing on the first day of the month following the Effective Date and continuing on the

first day of each month thereafter, with the final payment due on September 1, 2045 ("Payment

Period"), the Debtors shall make monthly principal and interest payments to Nationstar, based on

the amount of the Allowed Class 8B Claim amortized over the life of the loan at an annual

percentage rate of 5.0%.  The Debtors may accelerate payments to the holder of the Allowed

Class 8B Claim.  All unaccrued interest shall be deemed waived and no penalty shall be

chargeable to the Debtors in the event that the Debtors elect to accelerate payments.

-27-

Upon completion of the payments under the Plan to Nationstar on account of the Allowed Class 8B Claim as required by the Plan, all of the liens, security interests and Claims of Nationstar shall be deemed released and discharged.  To the extent requested by the Debtors, once the Allowed Class 8B Claim is paid as required by the Plan, Nationstar shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests.  Any right of any party under Section 506(c) of the Bankruptcy Code as against Nationstar or its collateral shall be preserved and shall survive Confirmation of the Plan.

Nationstar shall only be entitled to the reimbursement of reasonable attorneys' and professionals' fees and costs arising after Confirmation in the event that the Debtors are in material default of the payments required under the Plan on account of the Allowed Class 8B Claim (which default remains uncured after ten (10) days of the actual receipt of written notice to the Debtors from the holder of the Allowed Class 8B Claim as required by this Plan) and in the further event that the underlying note provides for such fees.   In the event of a material default by the Debtors under the Plan with respect to the payment of the Allowed Class 8B Claim, Nationstar shall provide written notice of such default as required by the underlying loan documents as well as to the Debtors by transmitting a Default Notice as described in Section 6.2A of the Plan.

The Plan shall supersede and replace the terms and conditions of the loan documents establishing the Allowed Class 8B Claim.

## Class 9A Claim

Chase is the holder of the Allowed Class 9A Claim.  For purposes of the Plan, the allowed amount of the Class 9A Claim is $634,425.13.  The Class 9A Claim is impaired.  The treatment of the Allowed Class 9A Claim is set forth in Article VI, Section 6.9A of the Plan.  Chase claims a lien on the real property owned by the Debtors located at 8450 Gleneagle Way, Naples, Florida.  The Allowed Class 9A Claim will receive Treatment C enumerated above.

## Class 9B Claim

Chase is the holder of the Allowed Class 9B Claim.  For purposes of the Plan, the allowed amount of the Class 9B Claim is $324,990.49.   The Class 9B Claim is impaired.  The treatment of the Allowed Class 9B Claim is set forth in Article VI, Section 6.9B of the Plan.  Chase claims a lien on the real property owned by the Debtors located at 4529 Maple, Brookfield, Illinois.  The Allowed Class 9B Claim will receive Treatment B enumerated above.

## Class 9C Claim

Chase is the holder of the Allowed Class 9C Claim.  For purposes of the Plan, the allowed amount of the Class 9C Claim is $478,842.57.   The Class 9C Claim is impaired.  The treatment of the Allowed Class 9C Claim is set forth in Article VI, Section 6.9C of the Plan.  Chase claims a lien on the real property owned by the Debtors located at 3024 S. Harlem, Riverside, Illinois.  The Allowed Class 9C Claim will receive Treatment C enumerated above.

**Class 9D Claim**

Chase is the holder of the Allowed Class 9D Claim.  For purposes of the Plan, the allowed amount of the Class 9D Claim is $4,951.53.   The Class 9D Claim is impaired.  The treatment of the Allowed Class 9D Claim is set forth in Article VI, Section 6.9D of the Plan. Chase claims a lien on the real property owned by the Debtors located at 6529 W. 16th Street, Berwyn, Illinois.  The Allowed Class 9D Claim will receive Treatment B enumerated above.


**Class 9E Claim**

Chase is the holder of the Allowed Class 9E Claim.  For purposes of the Plan, the allowed amount of the Class 9E Claim is $181,126.94.   The Class 9E Claim is impaired.  The treatment of the Allowed Class 9E Claim is set forth in Article VI, Section 6.9E of the Plan. Chase claims a lien on the real property owned by the Debtors located at 1921 S. Clinton, Berwyn, Illinois.  The Allowed Class 9E Claim will receive Treatment B enumerated above.


**Class 9F Claim**

Chase is the holder of the Allowed Class 9F Claim.  For purposes of the Plan, the allowed amount of the Class 9F Claim is $365,393.37.   The Class 9F Claim is impaired.  The treatment of the Allowed Class 9F Claim is set forth in Article VI, Section 6.9F of the Plan. Chase claims a lien on the real property owned by the Debtors located at 88 Kimbark Road, Riverside, Illinois.  The Allowed Class 9F Claim will receive Treatment B enumerated above.

**Class 9G Claim**

Chase is the holder of the Allowed Class 9G Claim.  For purposes of the Plan, the allowed amount of the Class 9G Claim is $165,163.12.  The Class 9G Claim is impaired.   The treatment of the Allowed Class 9G Claim is set forth in Article VI, Section 6.9G of the Plan. Chase claims a lien on the real property owned by the Debtors located at 1931 East Avenue, Berwyn, Illinois.  The Allowed Class 9G Claim will receive Treatment B enumerated above.

**Class 9H Claim**

Chase is the holder of the Allowed Class 9H Claim.  For purposes of the Plan, the allowed amount of the Class 9H Claim is $384,333.78.   The Class 9H Claim is impaired.  The treatment of the Allowed Class 9H Claim is set forth in Article VI, Section 6.9H of the Plan. Chase claims a lien on the real property owned by the Debtors located at 324 E. Burlington St., Riverside, Illinois.  The Allowed Class 9H Claim will receive Treatment B enumerated above.

**Class 10 Claim**

Wells Fargo is the holder of the Allowed Class 10 Claim.  For purposes of the Plan, the allowed amount of the Class 10 Claim is $191,150.77.  The Class 10 Claim is impaired.   The treatment of the Allowed Class 10 Claim is set forth in Article VI, Section 6.10 of the Plan. Wells Fargo claims a lien against the Debtors' residence located at 1447 Ashland Avenue, River Forest, Illinois.  Wells Fargo shall retain the liens and security interests it had against the Debtors' property as of the Petition Date.  Furthermore, Wells Fargo shall also retain any liens and security interests it acquired against the Debtors' property during the course of this Chapter

11 case pursuant to Orders entered by the Bankruptcy Court.  Any and all defaults shall be cured

by the Debtors in twelve (12) equal monthly installments payable on the first of each month

beginning in the first month after the Effective Date.  In full and final satisfaction, release and

discharge of the Allowed Class 10 Claim, the Debtors shall pay Wells Fargo the amount owed

pursuant to the terms of the note between Wells Fargo and the Debtors at the contract non-default

interest rate under that note over the remaining term of the note.  The Debtors may accelerate

payments to the holder of the Allowed Class 10 Claim.  All unaccrued interest shall be deemed

waived and no penalty shall be chargeable to the Debtors in the event that the Debtors elect to

accelerate payments.

Upon completion of the payments under the Plan to Wells Fargo on account of the

Allowed Class 10 Claim as required by the Plan, all of the liens, security interests and Claims of

Wells Fargo shall be deemed released and discharged.  To the extent requested by the Debtors,

once the Allowed Class 10 Claim is paid as required by the Plan, Wells Fargo shall prepare and

file any and all documents that may be reasonably necessary to effectuate the termination of such

liens and security interests.  Any right of any party under Section 506(c) of the Bankruptcy Code

as against Wells Fargo or its collateral shall be preserved and shall survive Confirmation of the

Plan.

Wells Fargo shall only be entitled to the reimbursement of reasonable attorneys' and

professionals' fees and costs arising after Confirmation in the event that the Debtors are in

material default of the payments required under the Plan on account of the Allowed Class 10

Claim (which default remains uncured after ten (10) days of the actual receipt of written notice to

the Debtors from the holder of the Allowed Class 10 Claim as required by this Plan) and in the

further event that the underlying note provides for such fees.   In the event of a material default

by the Debtors under the Plan with respect to the payment of the Allowed Class 10 Claim, Wells

Fargo shall provide written notice of such default as required by the underlying loan documents

as well as to the Debtors by transmitting a Default Notice as described in Section 6.2A of the

Plan.


**Class 11 Claim**

Bayview is the holder of the Allowed Class 11 Claim.   For purposes of the Plan, the

allowed amount of the Class 11 Claim is $715,753.35.   The Class 11 Claim is impaired.   The

treatment of the Allowed Class 11 Claim is set forth in Article VI, Section 6.11 of the Plan.

Bayview claims a first mortgage lien on the real property owned by the Debtors located at 3707

Jungle Plum Drive West, Naples, Florida.   The Debtors have entered into a contract to sell the

property for $500,000.00, the sale of which Bayview has preliminarily approved, pending further

information and Bankruptcy Court approval.   Pursuant to the agreement with Bayview regarding

the sale, Bayview will retain the liens and security interests it had against the Debtors' property

as of the Petition Date.   Furthermore, Bayview shall also retain any liens and security interests it

acquired against the Debtors' property during the course of this Chapter 11 case pursuant to

Orders entered by the Bankruptcy Court.

Pursuant to the agreement with Bayview, the property in which Bayview claims a lien,

shall be sold.   The net proceeds from the sale, after payment of closing costs, including, but not

limited to title charges, real estate taxes, tax prorations, brokers fees, security deposit credits and

attorney fees, shall be paid to Bayview and the second mortgage holder, Fay, in an amount to be

-33-

agreed to between Bayview and Fay, at the closing of the sale.  The payment at closing to

Bayview will be in complete and total satisfaction of the Allowed Class 11 Claim.

Upon the payment under the Plan at the closing of the sale to Bayview on account of the

Allowed Class 11 Claim as required by the Plan, all of the liens, security interests and Claims of

Bayview shall be deemed released and discharged.  Pursuant to the closing of the sale of the

property and to the extent requested by the Debtors, once the Allowed Class 11 Claim is paid as

required by the Plan, Bayview shall prepare and file any and all documents that may be

reasonably necessary to effectuate the termination of such liens and security interests.  The

Bankruptcy Court shall retain jurisdiction to enter a judicial release, should Bayview fail to

reasonably comply with this provision, or in the alternative compel Bayview to comply.  Any

right of any party under Section 506(c) of the Bankruptcy Code as against the holder of the

Allowed Class 11 Claim or its collateral shall be preserved and shall survive Confirmation of the

Plan.

Should Bayview and Fay fail to agree to the sale of the property, the Debtors will

surrender the property to Bayview and Fay in full and complete satisfaction of their respective

Allowed Class 11 and 12 Claims.


**Class 12 Claim**

Fay is the holder of the Allowed Class 12 Claim.  For purposes of the Plan, the

allowed amount of the Class 12 Claim is $40,651.63.  The Class 12 Claim is impaired.  The

treatment of the Allowed Class 12 Claim is set forth in Article VI, Section 6.12 of the Plan.  Fay

claims a second mortgage lien on the real property owned by the Debtors located at 3707 Jungle

-34-

Plum Drive West, Naples, Florida. The Debtors have entered into a contract to sell the property for $500,000.00, the sale of which Fay has preliminarily approved, pending further information and Bankruptcy Court approval. Pursuant to the agreement with Fay regarding the sale, Fay will retain the liens and security interests it had against the Debtors' property as of the Petition Date. Furthermore, Fay shall also retain any liens and security interests it acquired against the Debtors' property during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.

Pursuant to the agreement with Fay, the property in which Fay claims a lien, shall be sold. The net proceeds from the sale, after payment of closing costs, including, but not limited to title charges, real estate taxes, tax prorations, brokers fees, security deposit credits and attorney fees, shall be paid to Bayview on its first mortgage and Fay in amounts to be agreed to between Bayview and Fay, at the closing of the sale. The payment at closing to Fay will be in complete and total satisfaction of the Allowed Class 12 Claim.

Upon the payment under the Plan at the closing of the sale to Fay on account of the Allowed Class 12 Claim as required by the Plan, all of the liens, security interests and Claims of Fay shall be deemed released and discharged. Pursuant to the closing of the sale of the property and to the extent requested by the Debtors, once the Allowed Class 12 Claim is paid as required by the Plan, Fay shall prepare and file any and all documents that may be reasonably necessary to effectuate the termination of such liens and security interests. The Bankruptcy Court shall retain jurisdiction to enter a judicial release, should Bayview fail to reasonably comply with this provision, or in the alternative compel Bayview to comply. Any right of any party under Section 506(c) of the Bankruptcy Code as against the holder of the Allowed Class 12 Claim or its

-35-

collateral shall be preserved and shall survive Confirmation of the Plan.

Should Bayview and Fay fail to agree to the sale of the property, the Debtors will surrender the property to Bayview and Fay in full and complete satisfaction of their respective Allowed Class 11 and 12 Claims.

### Class 13A Claim

Green Tree is the holder of the Allowed Class 13A Claim.  For purposes of the Plan, the allowed amount of the Class 13A Claim is $208,722.60.   The Class 13A Claim is impaired.  The treatment of the Allowed Class 13A Claim is set forth in Article VI, Section 6.13A of the Plan. Green Tree claims a lien on the real property owned by the Debtors located at 12180 Toscana Way, Unit 203, Bonita Springs, Florida.  The Allowed Class 13A Claim will receive Treatment B enumerated above.

### Class 13B Claim

Green Tree is the holder of the Allowed Class 13B Claim.  For purposes of the Plan, the allowed amount of the Class 13B Claim is $25,365.19.  The Class 13B Claim is impaired.   The treatment of the Allowed Class 13B Claim is set forth in Article VI, Section 6.13B of the Plan. Green Tree claims a second mortgage lien on the real property owned by the Debtors located at 2926 S. Harlem Avenue, Riverside, Illinois.  The Allowed Class 13B Claim will receive Treatment C enumerated above.  There is also a first mortgage on the 2926 S. Harlem property, the treatment of which is referenced in Section 6.4G of the Plan.

**Class 14 Real Estate Tax Claims**

Real Estate taxing authorities in Illinois and Florida that hold liens and claims against properties of the Debtors in which Treatment A, Treatment B or Treatment C are applicable are the holders of the Allowed Class 14 Claims.  The Debtors estimate that the aggregate amount of Allowed Class 14 Claims is approximately $246,415.52.   The Class 14 Claims are not impaired.  The treatment of the Allowed Class 14 Claims is set forth in Article V, Section 5.1 of the Plan.  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Class 14 Allowed Real Estate Tax Claim, each holder of an Allowed Class 14 Claim shall receive and/or retain its lien on the real property owned by the Debtors, with the same validity, enforceability, perfection and priority as it had on the Petition Date and as may have been acquired during the course of this Chapter 11 case pursuant to Orders entered by the Bankruptcy Court.  The liens will either be paid out of the closing of the sale of the property or if the property is not sold, the liens will remain with the property after the deed in lieu is executed and the property is transferred to the secured creditor.  Any personal claims against the Debtors will be deemed satisfied upon the sale or transfer of the property by deed in lieu.

**Class 15 Real Estate Tax Claims**

Real Estate taxing authorities in Illinois and Florida that hold liens and claims against properties of the Debtors which the Debtors are retaining are the holders of the Allowed Class 15 Claims.  The Debtors estimate that the aggregate amount of Allowed Class 15 Claims is approximately $50,761.81.  The Class 15 Claims are not impaired.  The treatment of the Allowed Class 15 Claims is set forth in Article V, Section 5.2 of the Plan.  In full satisfaction, settlement,

release, and discharge of an in exchange for each and every Class 15 Allowed Real Estate Tax

Claim, each holder of an Allowed Class 15 Claim shall receive and/or retain its liens on the real

property owned by the Debtors, with the same validity, enforceability, perfection and priority as

it had on the Petition Date and as may have been acquired during the course of this Chapter 11

case pursuant to Orders entered by the Bankruptcy Court, until the Allowed Class 15 Claims are

paid.  The payment of the entire unpaid balance of the Allowed Class 15 Claims, shall be paid,

including interest and penalties, in quarterly payments over a five (5) year period that is no later

than five (5) years after the Petition Date, as funds are available, unless the holder thereof agrees

to a different treatment.  The payments under the Plan on any Allowed Class 15 Claims will be

made on a quarterly basis commencing on the first day of the calendar quarter following the

Effective Date and the first day of each quarter thereafter.

This treatment of Allowed Real Estate Tax Claims is intended to comply with the

requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.


**Class 16 Tenant Security Deposit Claims**

Tenants of the Debtors that have security deposits are the holders of Allowed Class 16

Claims.  The Debtors estimate that the aggregate amount of Allowed Class 16 Claims is

approximately $85,000.00.  The Class 16 Claims are not impaired.  The treatment of the Allowed

Class 16 Claims is set forth in Article V, Section 5.3 of the Plan.  In full satisfaction, settlement,

release, and discharge of and in exchange for each and every Allowed Claim in Class 16, each

holder of an Allowed Security Deposit Claim shall be paid as required subject to the terms of the

underlying lease between the Debtors and the Class 16 Claim holder. The Debtors shall timely

-38-

perform all obligations due from them under the terms of the underlying leases.

## Class 17 Claims

Homeowner Associations are the holders of Allowed Class 17 Claims.

Allowed Class 17 Claims of Homeowner Associations relate to the properties of the Debtors

which will receive either Treatment A, Treatment B or Treatment C and the properties will be

sold or deeded to the mortgage holders for the respective property. The Debtors estimate that the

aggregate amount of Allowed Class 17 Claims is approximately $70,057.72. The Class 17

Claims are not impaired. The treatment of the Allowed Class 17 Claims is set forth in Article V,

Section 5.4 of the Plan. In full satisfaction, settlement, release, and discharge of and in exchange

for each and every Class 17 Allowed Claim, each holder of an Allowed Class 17 Claim shall

receive and/or retain its lien, if any, on the real property owned by the Debtors, with the same

validity, enforceability, perfection and priority as it had on the Petition Date and as may have

been acquired during the course of this Chapter 11 case pursuant to Orders entered by the

Bankruptcy Court. The liens and claims will either be paid out of the closing of the sale of the

property or if the property is not sold, the liens will remain with the property after the deed in lieu

is executed and the property is transferred to the secured creditor. Any personal claims against

the Debtors will be deemed satisfied upon the sale or transfer of the property by deed in lieu.

## Class 18 Unsecured Creditor Claims

Unsecured Creditors, are the holders of Allowed Class 18 Claims. The Debtors estimate

that the aggregate amount of Allowed Class 18 Claims is approximately $328,714.66. The Class

-39-

18 Claims are impaired.  The treatment of the Allowed Class 18 Claims is set forth in Article VI,

Section 6.14 of the Plan.  In full satisfaction, settlement, release, and discharge of and in

exchange for each and every Allowed Class 18 Claim, each holder of an Allowed Class 18 Claim

shall be paid its pro rata share from a pot of $328,714.66, in quarterly payments over a period of

forty-eight (48) months, as funds are available, beginning with the first payment on the first day

of the calendar quarter following the Effective Date, and on the first day of each quarter

thereafter, from the cash on hand of the Debtors and from cash generated from the continuing

operations of the Debtors or the sale of the Debtors' properties.

**Class 19 Trust Claim**

The B.J. Hank Trust 1 is the holder of the Allowed Class 19 Claim.  The Debtors estimate

that the amount of Allowed Class 19 Claim is approximately $415,000.00.  The Class 19 Claim

is impaired.  The B.J. Hank Trust 1 is a trust for the benefit of the Debtors' family.  The Debtors

have borrowed funds from the B.J. Hank Trust 1 for the purchase of real estate and to pay

expenses for certain real estate in the past.  The treatment of the Allowed Class 19 Claims is set

forth in Article VI, Section 6.15 of the Plan.  In full satisfaction, settlement, release, and

discharge of and in exchange for the Allowed Class 19 Claim, the holder of the Allowed Class 19

Claim shall be paid its claim in the same pro rata percentage as is paid to the Allowed Class 18

Claims, however the payments to the holder of the Allowed Class 19 Claim shall be paid, in

quarterly payments over a period of forty-eight (48) months, as funds are available, beginning

with the first payment on the first day of the calendar quarter following the final payment made

to Allowed Class 18 Claims pursuant to the Plan, and the first day of each quarter thereafter,

from the cash on hand of the Debtors and from cash generated from the continuing operations of

the Debtors or the sale of the Debtors' properties.  The delay in payment of the Class 19 Allowed

Claim is limited to the terms of the Plan.

**Claims Objections**

Except as otherwise ordered by the Bankruptcy Court or as otherwise provided in the

Plan, the Debtors shall file any and all objections to the allowance of Claims on or within one

hundred and twenty (120) days after the Effective Date unless extended by Order of the

Bankruptcy Court.  Cause shall not be a requirement for an extension of this deadline.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against the

Debtors who are entitled to vote their acceptance or rejection of the Plan.  This Disclosure

Statement is disseminated in connection with the solicitation of acceptances of the Plan filed by

the Debtors.  The purpose of this Disclosure Statement is to provide such information as would

enable a hypothetical, reasonable investor, typical of the holder of Claims and Interests which are

impaired under the Plan, to make an informed judgment about the Plan.

The information contained in this Disclosure Statement has been submitted by the

Debtors unless specifically stated to be from other sources.  No representations concerning the

Debtors or the Plan, other than those set forth in this Disclosure Statement, have been authorized

by the Debtors. The Debtors believe that all of the information contained in this Disclosure

Statement is accurate.  However, the Debtors are unable to warrant that there are no inaccuracies.

-41-

**Under the Bankruptcy Code, a Class of Claims is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan.  Notwithstanding any provision of the Bankruptcy Code, the Claims of those who do not vote will be deemed acceptances and will be counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance.  Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote.**

**The Plan requires that the holders of Allowed Claims in Classes 1, 2A-B, 3, 4A-H, 5A-J, 6A-C, 7A-I, 8A-B, 9A-H, 10, 11, 12, 13A-B, 18 and 19 vote on Confirmation of the Plan.**

## HISTORY AND BACKGROUND

The Debtors are individuals who for over forty (40) years have owned and managed numerous residential rental properties.  The Debtors' properties include condominium units, single family homes, and multiple family units.  The majority of the properties are located in Berwyn and Riverside, Illinois.                              .

The Debtors' operational and profitability problems are principally due to the general economic problems facing this country over the last several years (particularly in real estate).  This has caused vacancies at many of the properties.  Furthermore, the Debtors' issues have been exacerbated by reason of mortgage financing at interest rate levels substantially above market rates.  This led to foreclosures being filed on almost half of the Debtors' properties , resulting in the filing of this Chapter 11 case.

-42-

## POST-PETITION ACTIVITIES

The continued administration of this Chapter 11 case has been primarily predicated upon the entry of a series of Cash Collateral Orders by the Bankruptcy Court.  These Cash Collateral Orders established the framework for the continued operation of the Debtors' business and the terms under which the Debtors could use the cash and cash equivalents that serve as collateral to the various secured creditors.  These Cash Collateral Orders were entered by the Bankruptcy Court on a consensual basis between the Debtors and the secured parties with the exception of one hearing between the Debtors and Chase, in which the Bankruptcy Court entered the cash collateral order over the objection of Chase.

The Debtors maintained the exclusive periods set forth in Section 1121 of the Bankruptcy Code throughout this Chapter 11 case.  The Plan and Disclosure Statement were filed within the exclusive periods (as extended by Orders of the Bankruptcy Court).

The Debtors have sold one property, pursuant to an Order entered by the Bankruptcy Court and also filed a motion to sell approximately 35 other properties in this Chapter 11 Case.  After negotiations with the secured creditors on those properties, numerous properties were removed from that sale.  As of the filing of this Disclosure Statement, the Debtors are in the process of selling the remaining properties through the process approved by the Bankruptcy Court.  The Debtors are also in the process of negotiating the sale of another property separate from the other sales.

The process of selling numerous properties and negotiating the disposition of other properties with secured creditors has enabled the Debtors to file the Plan and Disclosure Statement in order to commence the process of an exit strategy from this Chapter 11 case.

## OTHER ASPECTS OF THE PLAN

Except as set forth below, management of the Debtors' properties will remain unchanged after Confirmation of the Plan and Richard Hank shall be the disbursing agent for the payments required under the Plan.

Upon Confirmation of the Plan, the Debtors shall be revested with their assets, subject only to the terms and conditions of the Plan. The Debtors shall be entitled to continue to operate and manage their business and financial affairs without further Order of the Bankruptcy Court, except as set forth in the Plan. Payments to creditors pursuant to the Plan will be made from existing cash deposits and from funds realized from continued business operations. If necessary, the Debtors will pay the Allowed Secured Claims from the proceeds of refinancing and/or the sale of the Debtors' properties (or some portion thereof). The Debtors retain the option with respect to each property to provide a deed in lieu to the mortgage holder, at any time, in full and final satisfaction of all claims arising pursuant to the loan documents of that mortgagee with respect to said property.

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest or otherwise enforcing its Claims against the Debtors and their assets in this bankruptcy case except as authorized in the Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under the Plan. This injunction will remain in effect until all distributions under the Plan have been made.

The Plan is self-executing. The Debtors shall not be required to execute any newly created

-44-

documents to effectuate the terms of the Plan.  Upon payment as required by the Plan, any liens supporting such Claims shall be deemed released and discharged.

All executory contracts and unexpired leases which exist between the Debtors and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned, rejected or otherwise terminated by the Debtors shall be assumed upon Confirmation of the Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code.  Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed on or within thirty (30) days following the rejection.  The Debtors shall provide thirty (30) days notice of the rejection of any executory contracts and unexpired leases.  Further, with respect to Claims for default relating to any unexpired lease or executory contract that is assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following Confirmation.  Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 18 Claims.  Allowed Claims for default emanating from the assumption of unexpired leases and executory contracts will be treated as Administrative Claims.  Any person failing to file such a Claim within the time provided in the Plan shall be forever barred from asserting such Claim and shall not receive any distribution under the Plan.  The provisions for assumption, assignment and rejection shall be equally applicable to executory contracts and unexpired leases of real and personal property.

The Bankruptcy Court shall retain jurisdiction for certain specified purposes.  Any distribution under the Plan that remains unclaimed sixty (60) days after the distribution is made will become property of the Debtors, and will not be recouped in subsequent distributions.  The Debtors will have the right to make any distribution to creditors earlier than required by the Plan.

The Debtors shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation they deem appropriate.  The Bankruptcy Court shall retain jurisdiction for such litigation.  The Debtors are currently unaware of any litigation claims.

The provisions of the Plan shall bind all creditors and parties in interest.   Except as expressly provided in the Plan or the Bankruptcy Code, no interest or penalties accruing on or after the Effective Date, shall be paid on any Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment.  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: discharge the Debtors from all Claims, demands, liabilities, other debts and Interests that arose on or before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan.   This provision of the Plan is intended to include the full breadth of the discharge provided for and permitted under Section 1141 of the Bankruptcy Code and the Debtors shall seek at the Confirmation Hearing to have the Confirmation Order reflect that the discharge be entered as of the Effective Date pursuant to Section 1141(d)(5)(A)

To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy Code, the Debtors intend to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

## LIQUIDATION ANALYSIS

Failure of the Debtors to obtain Confirmation of the Plan could result in a forced

liquidation of the Debtors properties or a conversion to cases under Chapter 7 of the Bankruptcy

Code and immediate termination of the Debtors' business operations.  Under the Plan, all creditors

are being paid more than such creditors would receive in such liquidation.  With respect to the

Allowed Secured Claims, Secured Creditors are being paid the value of their collateral.  With the

exception of two of the Debtors' properties, all of the secured creditors filed claims regarding their

liens and mortgages on the Debtors' properties.  Each of these claims was filed as a fully secured

claim.  The two properties in which the secured creditor did not file a claim were scheduled as fully

secured claims.  In each instance where the Debtor is selling the property, either via the sale

approved by the Bankruptcy Court in Treatment A above or via the election to have the property

sold in Treatment C above, the lender has agreed to that treatment in full and final satisfaction of

its claim.  For each of the properties in which the Debtors are executing a deed in lieu, the secured

creditor is receiving the indubitable equivalent of its claim by receiving the property.  The claims

are filed as fully secured and they are receiving the property that is equivalent in value to the claim.

For the claims that are receiving Treatment B above, each of the secured creditors filed fully

secured claims and the sale will pay those claims as required by the Plan.

If this case were converted or dismissed, the secured creditors would look to foreclose on

each of the Debtors' properties.  While certain properties do have equity, the Debtors' believe that

the majority of the their properties have limited if any equity.  In a forced liquidation, such as

foreclosure by the secured creditor on its liens and security interests on each of the properties, any

proceeds realized from the liquidation of the Debtors' assets would first be used to pay the costs of

said liquidation, which for purposes of this discussion, the Debtors have estimated to be an amount

equal to 10% of the proceeds collected.  Once the costs of collection have been paid, each secured

creditor would use the remaining funds to pay its claim.  Since foreclosure sales generally generate

a sales price well below the market value of the property, this could result in the secured claims not

being fully satisfied.  While the Debtors have funds in the cash collateral accounts of

approximately $325,000.00 as of June 1, 2015, the amount of the claims would be greatly exceed

the amount of the cash held by the Debtors.  If this case was converted to a Chapter 7, additional

administrative claims would be created that would have to be paid.  After payment of the secured

claims through the foreclosures, Chapter 7 administrative claims and Chapter 11 Administrative

and Priority Claims would be paid prior to unsecured claims.  Only after making the above

disbursements of liquidation proceeds could any distribution be made to general Unsecured

Creditors.

Clearly, the dividend being paid to Unsecured Creditors under the Plan represents

substantially more than such Unsecured Creditors would ever receive in a liquidation.

Furthermore, the existing trade debt to be paid according to ordinary business terms would also be

included in the pool of Administrative Claims thereby substantially increasing the total dollar

amount due Administrative Claimants in a liquidation and further reducing the likelihood of any

funds being available for Unsecured Creditors.

Clearly, upon forced liquidation, Unsecured Creditors would get much less that full

payment of their claims.  In fact, the secured creditors would also likely receive substantially less

than that being paid under the Plan.  Accordingly, the Plan offers all creditors, including the

secured creditors, substantially more than such creditors would receive in a liquidation.

-48-

## IMPLEMENTATION OF THE PLAN

As discussed throughout this Disclosure Statement, distributions under the Plan shall be made from cash deposits existing at the time of Confirmation, from proceeds realized from the continued operation of the Debtors' business by the Debtors and, if necessary, from the proceeds of refinancing and/or sale of the properties.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement as **Exhibit B** are the financial reports of the Debtors during this Bankruptcy Case to demonstrate their current financial position.

Attached to this Disclosure Statement as **Exhibit C** are financial projections pertaining to the Debtors' projected business activity for the four (4) years following Confirmation of the Plan. The purpose of these Exhibits is to provide creditors with projected financial information concerning the Debtors' ability to make the payments required under the Plan.  These projections were prepared by the Debtors and are based upon an analysis of past business results and projected future business activity. These projections, coupled with the Debtors' available cash, establish that the Plan is feasible.

The projections represent reasonable calculations based upon historical progressions of the Debtors' business.  These projections clearly reflect the Debtors' ability to perform under the proposed Plan.  Furthermore, the Debtors' achievements and performance during the course of this reorganization case further indicate that the Plan is feasible.

After Confirmation of the Plan, the Debtors will operate their businesses in the ordinary

-49-

course.  Payments to creditors pursuant to the Plan will be made from funds realized from

continued business operations, from existing cash deposits and cash resources of the Debtors

and/or the sale and/or refinancing of the properties.

## **RECOMMENDATION**

The Debtors believe that the Plan represents an opportunity for the holders of Allowed

Claims, including Secured Creditors, to receive substantially more than such claimants would

receive in forced liquidations.  Given the conservative financial projections and the Debtors' past

performance, the Plan is feasible.  Since all claims will be satisfied under the Plan, it is also fair.

The Debtors strongly recommend that those persons entitled to vote, vote to accept the Plan.


Respectfully Submitted,

Richard and Joan Hank,
Debtors/Debtors-in-Possession,


By:  /s/Jeffrey C. Dan
          One of their attorneys

**<u>DEBTORS' COUNSEL</u>**:
Eugene Crane (Atty. No. 0537039)
Arthur G. Simon (Atty. No. 03124481)
Jeffrey C. Dan (Atty. No. 06242750)
Brian P. Welch (Atty. No. 6307292)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
TEL: (312) 641-6777
FAX: (312) 641-7114